UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| DAWN PERLMUTTER, *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | Civil Action No. 13-1872 (ABJ) |
| TRINA AND JEFFREY VARONE, *et al.*, | ) ) ) | |
| Defendants. | ) ) | |

## MEMORANDUM OPINION

Plaintiffs Dawn Perlmutter and Thomas M. Bolick bring this *pro se* action against defendants Trina and Jeffrey Varone, Gary Altman, Altman & Associates, Rabbi Shalom Raichik, Mark S. Roseman, John and Jane Does 1–10, Scott Perlmutter, Montgomery County, Maryland, and Maryland Circuit Court Judges Steven G. Salant and Terrence J. McGann. Compl. at 7–9[1] [Dkt. # 1]. The complaint also names Hope Village, a "community-based Residential Reentry Center" located in the District of Columbia, as a defendant *in rem*.[2] *Id.* at 8. All of the claims in plaintiffs' eighty-two page complaint appear to arise from the death in

---

[1] For the sake of consistency, the Court will cite to page numbers in the complaint, as paragraph numbers are not always available.

[2] Defendants object that "Hope Village" is not a proper party, and that "Hope Village, Inc.," the entity that would be proper, is not named in the complaint. Defs. Varone & Raichik's Mot. to Dismiss for Improper Venue & Mem. in Supp. at 2 [Dkt. # 2]. But because plaintiffs proceed *pro se*, the Court will "take particular care to construe the plaintiff[s'] filings liberally," and will hold the complaint "'to less stringent standards than formal pleadings drafted by lawyers.'" *Cheeks v. Fort Myer Constr. Co.*, 722 F. Supp. 2d 93, 107 (D.D.C. 2010), quoting *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972) (per curiam).

Maryland of plaintiff Perlmutter's mother, Joan Sutton, the probate of Ms. Sutton's estate in Maryland, and the prior litigation in Maryland relating to the estate.

Every named defendant has moved to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3) and 28 U.S.C. § 1406(a) (2012).[3] *See* Defs. Varone & Raichik's Mot. to Dismiss for Improper Venue & Mem. in Supp. [Dkt. # 2]; Def. Hope Village, Inc.'s Mot. to Dismiss for Improper Venue & Mem. in Supp. [Dkt. # 4]; Defs. Gary Altman, Esq. & Altman & Associates' Mot. to Dismiss for Improper Venue & Mem. in Supp. [Dkt. # 6]; Def. Mark S. Roseman's Mot. to Dismiss Compl. [Dkt. # 10]; Def. Scott Perlmutter's Mot. to Dismiss Compl. [Dkt. # 16]; Def. Montgomery County, Maryland's Mot. to Dismiss Compl. [Dkt. # 22]; Defs. Judges Salant & McGann's Mot. to Dismiss, or in the Alternative, for Summ. J. [Dkt. # 26].

Because all of the key events and injuries detailed in the complaint occurred in Maryland, venue is not proper in the District of Columbia. Therefore, the Court will dismiss the complaint.

## BACKGROUND

Plaintiffs assert thirteen counts against the defendants, most of whom are not state officials: Counts I–IV and VIII allege that defendants contravened 42 U.S.C. § 1983 (2012) by violating plaintiffs' civil rights and procedural and substantive due process rights, as well as the Commerce Clause of the United States Constitution; Count V states that defendants retaliated against plaintiffs for their exercise of their First Amendment rights; Count VI alleges the existence of a conspiracy among defendants to violate plaintiffs' civil rights; Count VII contends that defendants committed "Fraud, Deceit, and Common Law Fraud" against plaintiffs; Count IX alleges that defendants committed conversion and violated the Racketeer Influenced and Corrupt

---

3   Several defendants also assert additional grounds for dismissal, but the Court need not reach those arguments as it finds that venue is not proper in the District of Columbia.

Organizations Act (RICO); Count X states that defendants "never accounted for or paid the value of" the property allegedly taken from plaintiffs; Count XI contends that defendants have been unjustly enriched; and Count XII charges defendants with negligence.[4]  Compl. at 61–78.  The final count, Count XIII, seeks a remedy for the allegedly fraudulent transfer of Hope Village.  *Id.* at 78–80.

The event that underlies all thirteen counts of the complaint is the probate of plaintiff Perlmutter's mother's will in Montgomery County, Maryland.  *See id.* at 4–6, 11–13, 18–19, 50, 57–59, 61.  After probate closed, plaintiffs filed three separate complaints in Maryland state courts alleging fraud and that the will was forged, and objecting to the Sutton estate's final accounting.  *See id.* at 18, 31, 35, 49, 50.  All three complaints were dismissed, and those dismissals were affirmed by the Maryland Court of Special Appeals.  *See id.* at 18, 19, 22, 24; *see also* Defs. Varone & Raichik's Reply to Opp. to Mot. to Dismiss at 2 [Dkt. # 9].  According to the complaint, defendant Judge McGann issued sanctions against plaintiffs in connection with one of these proceedings.  Compl. at 16, 21, 31, 43–44.

In this case, plaintiffs allege the existence of a large-scale conspiracy organized by defendant Trina Varone – who is plaintiff Perlmutter's sister – and the "Varone Family" to deprive Perlmutter of her rightful inheritance.  *Id*. at 3–4; *see also* Pls.' Combined Resp. in Opp. of Defs. Perlmutter & Roseman's Mot. to Dismiss at 8 [Dkt. # 29] ("The core of the Complaint is that all Defendants 'committed fraud in a conspiratorial scheme.'").  Plaintiff Bolick claims an interest in this case because plaintiff Perlmutter previously assigned him a portion of her anticipated inheritance.  Compl. at 4.  Plaintiffs contend that the Varones either conspired with or

---

4  The Court also notes that two of the defendants, Judge McGann and Judge Salant, are judges and therefore absolutely immune from civil liability for judicial acts taken in an official capacity.  *See Mireles v. Waco*, 502 U.S. 9, 11–12 (1991) (per curiam); *Sindram v. Suda*, 986 F.2d 1459, 1460 (D.C. Cir. 1993) (per curiam).

indirectly influenced all of the other defendants, including the two state judge defendants, as well as Montgomery County, Maryland. *See id.* at 15, 28, 30, 46, 47, 52, 57, 60, 69, 72. Plaintiffs claim that to advance the scheme, the Varones either manipulated Perlmutter's mother into signing a new will that disinherited Perlmutter, or forged a new will entirely. *See id.* at 11, 22, 33, 37, 48, 43, 51–52, 54. Plaintiffs further claim that the Varones influenced the judges who presided over the proceedings related to the probate and led them to issue wrongful rulings against them. *See id.* at 5–6. And, according to plaintiffs, the Hope Village halfway house, located in the District of Columbia, is the headquarters of the "Varone crime family" and the base for all of their nefarious operations. Pls.' Resp. and Mem. in Opp. of Defs. Jeffrey & Trina Varone & Raichick's Mot. to Dismiss at 2 [Dkt. # 8] ("Pls.' Resp.").

Plaintiffs seek a declaration that their rights were violated; money damages of at least $90,000,000; an order creating a "constructive trust" for plaintiff Perlmutter; an order disgorging the "monies, profits, and/or benefits" that have flowed from defendants' alleged conduct; fees; exemplary damages; compensatory damages; consequential damages; special damages; and punitive damages. Compl. at 80–82.

## STANDARD OF REVIEW

"'In considering a Rule 12(b)(3) motion, the court accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor, and resolves any factual conflicts in the plaintiff's favor.'" *Pendleton v. Mukasey*, 552 F. Supp. 2d 14, 17 (D.D.C. 2008), quoting *Darby v. U.S. Dep't of Energy*, 231 F. Supp. 2d 274, 276–77 (D.D.C. 2002). The Court may consider material outside of the pleadings. *Artis v. Greenspan*, 223 F. Supp. 2d 149, 152 (D.D.C. 2002). "Because it is the plaintiff's obligation to institute the action in a permissible forum, the plaintiff usually bears the burden of

establishing that venue is proper." *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003). "Unless there are pertinent factual disputes to resolve, a challenge to venue presents a pure question of law." *Williams v. GEICO Corp.*, 792 F. Supp. 2d 58, 62 (D.D.C. 2011).

## ANALYSIS

The Court will dismiss the complaint because venue is not proper in the District of Columbia. By statute, civil actions may be brought in:

> (1) a judicial district in which any defendant resides, if all defendants are residents of the state in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided in this section, any judicial district in which any defendant is subject to the court's personal jurisdiction with respect to such action.

28 U.S.C. § 1391(b)(1)–(3) (2012). Subsections (b)(1) and (b)(3) do not provide a basis for venue in the District of Columbia because nearly all of the defendants are residents of Maryland,[5] *see* Compl. at 7–13, and because Maryland – the location of most of the events and injuries alleged in the complaint – is a "district in which [this] action may otherwise be brought." *See* 28 U.S.C. § 1391(b)(1), (3).

Plaintiffs appear to argue that venue is proper under subsection (b)(2) because "a substantial part of the acts and omissions relevant to the claim occurred in the District of Columbia." *See* Pls.' Resp. at 18. The "substantial part" requirement does not mean that plaintiffs may only bring suit in a district where every event that supports their claims occurred, but plaintiffs must show that a considerable portion of the events took place in their chosen

---

5  According to the complaint, the only defendants who do not reside in Maryland are Mark S. Roseman, who lives in Pennsylvania, and defendant *in rem* Hope Village, which is located in the District of Columbia. Compl. at 2, 7–8.

5

forum. *See Modaressi v. Vedadi*, 441 F. Supp. 2d 51, 57 (D.D.C. 2006) ("Nothing in section 1391(b)(2) mandates that a plaintiff bring suit in the district where the most substantial portion of the relevant events occurred . . . ."). In determining whether the "substantial part" requirement is met, courts should undertake a "commonsense appraisal" of the "events having operative significance in the case." *Lamont v. Haig*, 590 F.2d 1124, 1134 & n.62 (D.C. Cir. 1978) (noting that in certain situations, "the forum court should not oppose the plaintiff's choice of venue if the activities that transpired in the forum district were not insubstantial in relation to the totality of events giving rise to the plaintiff's grievance").

In this case, plaintiffs devote the vast majority of their eighty-two page complaint to voicing their grievances surrounding the probate of the Sutton estate and the related judicial proceedings in Maryland. First, plaintiffs claim that defendant Trina Varone wrongfully "took complete control of" Joan Sutton and the Sutton estate and created a fraudulent will. *See, e.g.*, Compl. at 4 (alleging that defendant Trina Varone – plaintiff Perlmutter's sister – embezzled money from Sutton "for many years" before she "took complete control of her mother by conspiring with other defendants to change by forgery all of Joan's legal documents including the medical power of attorney; last will testament; business trust and inter alia real estate and bank accounts"); *id.* at 43 ("The evidence will overwhelmingly demonstrate that Varone . . . arranged for the will in secret and then instructed her lawyers subordinates to act as bogus 'witnesses' to the alleged signature."); *id.* at 48 (alleging that "Trina [Varone] covet[ed] not only all of the money but to assume the role of her mother and project to the world that she was the successful child schemed with others to defraud" Joan Sutton and plaintiff Perlmutter); *id.* at 49 (alleging that Trina Varone "unlawfully intimidated, threatened, coerced and retaliated against [Joan Sutton] by denying her medical care and forcing her to live in constant fear," and "took

control of Joan and all the companies . . . [and] cut [plaintiff Perlmutter] off from all income and schemed to put her in a financial bind"); *id.* at 54 ("Trina Varone caused the murder of her Mother Joan D. Sutton as part of her scheme to defraud Dawn Perlmutter.").

Plaintiffs further allege that the Maryland courts, and defendants Judge Salant and Judge McGann in particular, denied them fair proceedings related to the probate of Sutton's estate. *See, e.g.*, *id.* at 4 (challenging jurisdiction of Maryland Orphans' Court); *id.* at 5 (stating the defendant judges acted outside of their authority "by issuing orders that simply defy reality"); *id.* at 13–15 (alleging that defendant Judge Salant deprived plaintiffs of fair proceedings and due process and "invented" rules "to favor the Varone Family"); *id.* at 17–21 (describing allegedly unfair judicial proceedings); *id.* at 22–28 (describing the allegedly unfair treatment of plaintiffs' claims on appeal and stating that the claims were dismissed as part of a "purposeful effort to distort and deceive"); *id.* at 43 (alleging defendant Judge McGann used "'procedures' that were not fair, general, or reasonable, and were thus substantively arbitrary"); *id.* at 44–47 (alleging "bias and prejudice" on the part of another appellate panel); *id.* at 58 (stating that "[d]uring the course of the litigation in Montgomery County . . . [d]efendant Judge Salant adopted the proposed order prepared by [d]efendant Varone that order the [p]laintiffs['] rights be violated"); *id.* at 59 (alleging that "[t]he conduct and procedures used by the [Maryland] Court of Special Appeals in dealing with this case and arriving at an opinion are 'shocking' and egregious"). In making these claims, plaintiffs repeat significant portions of what appear to be the pleadings they filed in Maryland courts in the text of the complaint. *See id.* at 18–20, 31–42.

In addition, plaintiffs contend that defendants Jeffrey and Trina Varone induced the defendant Maryland state judges into depriving them of their rightful share of Sutton's estate through fraud. *See, e.g.*, *id.* at 5; *id.* at 11 ("Defendant Trina Varone initiated a scheme to . . .

7

perpetrate a fraud by invoking the jurisdiction of the [Maryland] orphans court for a court order to grant her control over real property and personal property that did not belong to her."); *id.* at 12 ("Defendants sought to have [d]efendant Salant to serve as Judge for the orphans court of Montgomery County, Maryland knowing that Varone had donated significant sums of money through religious associations with direct ties to Rabbe Raichik with direct ties to [d]efendant Judge Salant); *id.* at 50 ("Defendant, Trina Varone caused a fraudulent Will . . . and other documents . . . to be admitted to probate by the Court . . . ."); *id.* at 54 (same); *id.* at 59 (alleging that "[d]efendants' attorney has judges influencing legal actions" in Montgomery County courts); *id.* at 60 ("The Varone Family have abused the court system to obtain orders affecting [p]laintiffs' substantial rights all based on technicalities.").

And plaintiffs claim that all of the defendants conspired together to obstruct plaintiffs' access to justice in Maryland and to "deny [p]laintiffs['] important rights including the right to contract and access to the court." *Id*. at 11; *see also id.* at 5–6 (alleging that defendants "worked to keep Perlmutter and Bolick from access to the court and from an impartial and disinterested tribunal"); *id.* at 11 (alleging all defendants conspired to deprive plaintiffs of their share of the Sutton estate); *id.* at 12 ("Defendants' scheme perpetrated a Fraud upon the [p]laintiffs and the courts that means extrinsic fraud, that is, fraud that actually prevents an adversarial trial."); *id.* at 16 (alleging that, after plaintiffs secured the recusal of defendant Judge Salant, the Varone-led conspiracy caused defendant Judge McGann to be appointed presiding judge); *id.* at 28–31 (restating allegation of conspiracy); *id.* at 46–47 (same); *id.* at 56 ("Defendants have induced severe financial hardship upon, and injured, oppressed, threatened, instructed, obstructed, and/or

intimidated [p]laintiffs."); *id.* at 57 ("On numerous occasions, the Varone family confederates have stalked and harassed petitioners.").[6]

Only a few pages of the complaint even touch upon events alleged to have occurred in the District of Columbia, and these allegations do not constitute the "substantial part" of plaintiffs' claims needed to establish venue under 28 U.S.C. § 1391(b)(2). For instance, plaintiffs make the broad assertion that "[d]efendants have a principal place of business; function as entities within; and . . . [that] significant events giving rise to the complaint occurred within the District of Columbia." Compl. at 7. But at the same time, the complaint also expressly specifies that almost all of the defendants reside and do business in Maryland or Pennsylvania. *See id*. at 7–9.

As to the other defendants, plaintiffs claim that Trina and Jeffrey Varone have carried on illegal activity at their purported "headquarters" in the District of Columbia, including: "'dummy' type corporations, illegal cooks, housekeepers, and labor used for the private interests of the Varone family and paid for on the books of the legitimate Hope Village." *Id.* at 50. But these conclusory allegations, even if taken as true, do not concern events having any "operative significance" to the harms alleged in the complaint. *See Lamont*, 590 F.2d at 1134. And plaintiffs' statement in a pleading that the Varones directed communication to them from the District of Columbia, *see* Pls.' Resp. at 4, is too "insubstantial" to create venue under subsection (b)(2). *See Lamont*, 590 F.2d at 1134 n.62.

In addition, although defendant *in rem* Hope Village is located in the District of Columbia, it is not "a substantial part of the property that is the subject of the action" for purposes of establishing venue in this district. *See* 28 U.S.C. § 1391(b)(2). The property at the center of this case is the estate of plaintiff Perlmutter's mother, which by all indications was

---

6 The role of defendants John and Jane Does 1–10 in the conspiracy is not clear from the complaint.

located in Montgomery County, Maryland. Given that most of plaintiffs' allegations relate to the alleged conspiracy and defendants' conduct in Maryland court and probate proceedings, and given that plaintiffs also seek "assets from bank accounts, jewelry, real estate, etc." from the estate of Ms. Sutton, *see* Compl. at 73, the Court cannot conclude that the single property of Hope Village constitutes "the subject of the action" for purposes of subsection (b)(2).

Thus, none of the requirements of section 1391(b) is met in this case, and so the Court will dismiss the complaint. *See* 28 U.S.C. § 1406(a) ("The district court of a district in which is filed a case laying venue in the wrong division or district shall dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought."). While "[t]he court must afford some deference to the plaintiff's choice of forum . . . this deference is mitigated where the plaintiff's choice of forum has 'no meaningful ties to the controversy and no particular interest in the parties or subject matter.'" *Trout Unlimited v. U.S. Dep't of Agric.*, 944 F. Supp. 13, 17 (D.D.C. 1996) (internal citation omitted), quoting *Chung v. Chrysler Corp.*, 903 F. Supp. 160, 165 (D.D.C. 1995). Moreover, "[t]he decision whether a transfer or a dismissal is in the interest of justice . . . rests within the sound discretion of the district court." *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).

Here, the District of Columbia has only a minimal interest in these claims, as they arise from the probate of an estate in Maryland and related judicial proceedings in Maryland state court. The fact that the decedent owned some property in the District of Columbia is not enough to establish venue here under these circumstances. Therefore, the Court will grant defendants' motions and dismiss the case.

## CONCLUSION

Because the vast majority of the events and injuries that underlie this case took place in Maryland, venue is not proper in the District of Columbia. Accordingly, the Court will grant defendants' motions and dismiss the complaint. A separate order will issue.

/s/ Amy B. Jackson

AMY BERMAN JACKSON
United States District Judge

DATE: July 22, 2014